OPINION OF THE COURT
Thomas A. Stander, J.
The plaintiffs, Gregory Avery and Sundae Avery (Avery), submit this motion seeking summary judgment against the defendants, Raymond E. Zahm and Carol B. Zahm (Zahm), on plaintiffs’ first cause of action for specific performance of a purchase and sale contract for residential property.
The defendant, Re/Max Results, Inc. (Re/Max), submits a motion seeking summary judgment dismissing the complaint as to the defendant, Re/Max Results, Inc.
FACTS
The purchase and sale contract of the parties was entered into on May 1, 1998, when the plaintiff buyers Avery (Buyers) accepted the counteroffer of the defendant sellers Zahm *829 (Sellers). The subject purchase and sale contract contained the following contingencies:
(a) Mortgage contingency at paragraph 4 (a);
(b) Sale of other property contingency at paragraph 4 (c);
(c) Attorney approval at paragraph 4 (e);
(d) Structural engineer’s approval at paragraph 4 (g).
The counteroffer submitted by the Sellers, which was accepted by the Buyers on May 1, 1998, changed the original purchase and sale contract by modifying the “bump” clause of the sale of other property contingency to three banking days and requiring the engineer’s approval by May 8, 1998.
Thereafter, on May 5, 1998, the Buyers’ attorney submitted by fax his approval of the purchase and sale contract on behalf of the Buyers to the attorney for the Sellers, the selling agent and the listing agent.
The Buyers’ attorney received a fax from the agent acting in a dual capacity, Pam Ketchum of Re/Max Results, Inc., that a buyer’s notice to remove contract contingency, dated May 4, 1998, had been served by Federal Express on the Buyers on Tuesday, May 5, 1998. Under the contract terms the Buyers then had three days to remove the contingency. On May 6, 1998, the Buyers, in writing, removed the contingency regarding the sale of their residence property.
On May 7, 1998 the Buyers removed, in writing, the contingency regarding the structural engineer’s report. On May 8, 1998 the Buyers received a mortgage commitment from M&T Mortgage Corporation. On May 8, 1998 the attorney for the Buyers sent by fax transmission to the attorney for the Sellers a copy of the M&T mortgage commitment and the Buyers’ signed release of the engineer’s contingency.
On May 8, 1998 at 2:47 p.m., the Sellers’ attorney sent two fax transmissions, immediately following each other, to the Buyers’ attorney. One fax transmission purports to deem the purchase and sale contract between the parties null and void. The fax transmission states that “as a result of the Avery’s [Buyers’] failure to effectively and validly remove their sales contingency within the required time period, the Purchase and Sale Contract is deemed null and void and the listing Realtor is hereby directed to return any deposits held.”
The other fax letter advises that attorney approval for the Sellers is being withheld. Specifically, this fax letter states the following with reference to the attorney approval: “Upon my explanation to the Zahms [Sellers] of the formal financial and *830 procedural aspects of the contract, they have realized that the contract is not as they originally understood and, therefore, deem it not acceptable. As a result thereof I am not approving the said contract.”
The attorney for the Buyers promptly responded by letter of May 11, 1998, faxed to Sellers’ attorney and Re/Max Results, Inc., Elena Richards and Pam Ketchum, that despite the May 8, 1998 letters of Sellers’ attorney, there is a binding contract for the sale of the subject property, that all contingencies were properly removed, and that the Buyers will be completing the transaction.
On or about May 13, 1998 the Buyers received a telephone call from the appraiser for M&T Mortgage Corporation, Michael Zazzara, indicating that he attempted to appraise the subject property. The appraiser for the bank was notified by Elena Richards, the listing broker on behalf of Re/Max, that the deal was dead and she would not allow the appraiser entry to the property. The purchase and sale contract was never completed and the property was not transferred to the Buyers.
plaintiffs’ motion for partial summary judgment on the . CAUSE OF ACTION FOR SPECIFIC PERFORMANCE
A. Sales Contingency
The purchase and sale contract contains the following sales contingency: “This offer is subject to Buyer obtaining a contract for the sale of Buyer’s property located at 201 Hilltop Lane, Spencerport no later than June 30, 1998. Unless and until Buyer has removed this sale contingency, in writing, if Seller receives another acceptable purchase offer, Seller may notify Buyer in writing that Seller wants to accept the other offer and Buyer will then have 5 banking days to remove this sale contingency by written notice to the Seller. If Buyer does not remove the sale contingency after receiving notice from Seller, Buyer’s rights under this contract shall end and Seller shall be free to accept the other purchase offer and Buyer’s deposit shall be returned.” The counteroffer of the Sellers changed the bump provision to: “sale contingency removal is 3 banking days.” All other terms of this clause were unchanged.
The Buyers were properly notified by the Sellers’ formal buyer’s notice to remove contract contingency dated May 4, 1998 and received by Buyers on May 5, 1998, that another offer to purchase the property had been received and accepted. Buyers had three days to remove the sale of other property *831 contingency by written notice to the Sellers. Thereafter, Buyers complied with this provision and removed the sale of other property contingency in writing to the Sellers within the three-day period.
The sales contract contingency also contains a clause that “Buyer may not remove this contingency if Buyer’s mortgage loan commitment requires the sale and/or transfer of this property as a condition of the mortgage loan funding unless Buyer has a contract for the sale of the property which is not then subject to any unsatisfied contingencies.” Buyers’ mortgage commitment is not conditioned upon a sale or transfer of Buyers’ residential property. Therefore, the Buyers’ only obligation upon receipt of the “bump” notice was to provide written notice removing the sale of property contingency. Buyers complied with this requirement.[1]
Nonetheless, the Sellers’ attorney attempts to rescind the parties’ purchase and sale contract by expanding and broadening the stated contractual terms regarding the mortgage contingency. Sellers contend that the submitted mortgage commitment requiring Buyers to provide to the bank a “gift letter” should be interpreted as a substitution for the usual “proceeds of sale” requirement.
The Sellers’ position is that because the mortgage commitment requires a gift letter, then the Buyers are not allowed to remove the sales contract contingency clause of the purchase and sale contract. This interpretation by the Sellers allows them to then void the purchase and sale contract.
The threshold problem with the Sellers’ reasoning is that there is absolutely no language in the parties’ purchase and sale contract to support this position. The only relevant provision in the purchase and sale contract prohibits the Buyers from removing the sale of other property contingency when the sale of such property is a condition of the mortgage loan funding. In the instant case, the sale of property by the Buyers was not a condition of the mortgage commitment. There are no terms or conditions in the parties’ contract allowing the Sellers any control over the specific terms of the Buyers’ mortgage commitment, except to the extent any condition in the commitment requiring a sale of property prevents removal of the sales contingency.
*832 The Sellers’ attempt to deem the contract null and void based on failure to remove the sale contingency is unavailing. The Buyers properly removed the sale contingency pursuant to the terms of the purchase and sale contract. The attempt by Sellers defendants to void such contract based on failure to remove the sale contingency is ineffective and a nullity.
B. Attorney Approval Contingency
The purchase and sale contract contains an attorney approval contingency clause: “This contract is subject to the written approval of attorneys for Buyer and Seller within 5 banking days from date of acceptance (the Approval Period’). If either attorney makes written objection to the contract within the Approval Period and such objection is not cured by written approval by both attorneys and all of the parties within the Approval Period, then either Buyer or Seller may cancel this contact by written notice to the other and any deposit shall be returned to the Buyer.”
The attorney for the Sellers sent a letter within the required time frame indicating he was not approving the contract. The basis for not approving the contract was that upon explanation to the Sellers of the formal financial and procedural aspects of the contract, “they have realized that the contract is not as they originally understood and, therefore, deem it not acceptable.”
The attorney approval language contained in the purchase and sale contract in this case is exactly the same as that in the case of Christ v Brontman (175 Misc 2d 474 [Sup Ct, Monroe County 1997]). In that case we determined that any objection must be affirmatively stated in writing because “[additional process was required before either party could cancel the Contract.” (Christ v Brontman, at 477.)
The process established by the purchase and sale contract requires the objecting attorney to make written objection, allow the opposing party an opportunity to cure, and then, if no cure occurs within the stated period, written cancellation of the contract may follow. In the instant case, the attorney’s “nonapproval” failed to state an objection to be cured. A general statement of dissatisfaction with the contract, without any opportunity for the other party to cure the stated, written objection in accordance with the agreed-upon terms, will not support an attorney’s disapproval.
For purposes of this litigation, Sellers’ attorney now lists numerous specific objections to the contract. An “after the fact” *833 (and after the Approval Period) recitation of objections does not meet the requirements contained in the contract language.
The Sellers’ counsel also argues on this motion that the Approval Period was expiring on May 8, 1998; therefore, since Sellers’ objection letter was received by the Buyers’ attorney by fax in mid-afternoon of the last day to cure, there would be no time to cure the objections within the Approval Period. Clearly, the intention of the language is to afford the opposition an opportunity to cure any objection made by the attorney. One side cannot unilaterally determine that there is inadequate time to cure, and merely bypass the contract provisions and cancel the contract.
Based upon the Christ v Brontman case (supra), including the cases cited therein,[2] and the facts of this case, the Sellers’ attorneys letter of May 8, 1998, indicating he was not approving the contract, had no effect on the enforceability of the purchase and sale contract because it did not comply with the stated contractual process requirements. The purchase and sale contract between the parties is a viable, binding, and enforceable agreement.
C. Conclusion On Plaintiffs’ Motion
The motion by the plaintiffs, Gregory Avery and Sundae Avery, for partial summary judgment granting specific performance of tbe purchase and sale contract is granted.
DEFENDANT RE/MAX’s MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT
The defendant, Re/Max Results, Inc., seeks summary judgment dismissing the complaint as against Re/Max Results, Inc. Initially it should be noted that the complaint does not allege a cause of action against a real estate agent. The cause of action stated in the complaint is against the real estate broker for tortious interference with an existing contract between the plaintiffs and the defendants. The allegations include, among others, that defendant Re/Max Results, Inc., was both the listing and selling broker; Re/Max failed and refused to allow an appraisal by the Buyers’ loan entity in connection with the mortgage commitment; and Re/Max had knowledge of the sales *834 contract but induced the Sellers to breach the contract or otherwise render performance impossible.
The facts presented regarding the representations of the Buyers and the Sellers are as follows:
(a) The purchase and sale contract states that “[t]he parties agree that Re/Max Results brought about this purchase and sale”;
(b) The purchase and sale contract lists the selling broker as Re/Max Results, with the selling agent as Pam Ketchum;
(c) The purchase and sale contract lists the listing broker as Re/Max Results, with the listing agent as Elena Richards;
(d) A disclosure regarding real estate agency relationships (Disclosure Form) form was executed on April 30, 1998, indicating Pam Ketchum of Re/Max Results was a dual agent, and Elena Richards of Re/Max Results was an agent of the Sellers. The Disclosure Form executed by the Buyers and the Sellers addresses the relationships and duties of the real estate agents to the Buyers and the Sellers. (Real Property Law § 443.)
The Disclosure Form and the law that requires such disclosure do not address or impose any requirements for disclosure to a buyer and seller of the broker with whom both the listing agent and the dual agent are associated. It is clear, however, that in this case the broker, Re/Max, was acting in a dual capacity as the broker for both the listing agent and the dual agent. As the broker for the listing agent and for the dual agent, the broker had a relationship with both the Buyers and Sellers, created through the associated real estate agents.
In the instant case, the Buyers have sued the broker for tortious interference with the purchase and sale contract. The real estate broker and owner of defendant Re/Max, Rich Miller, avers that “[rjelying upon the provision of the contract relative to Attorney approval, your deponent determined that any contract which may have existed by and between the Plaintiffs and the Defendants Zahm was at that point null and void.” (Miller affidavit of Sept. 21, 1998.) By such a determination, the broker unilaterally chose the Sellers’ position over that of the Buyers’. The broker, Re/Max, has no right to conclude that one party’s position on a purchase and sale contract dispute overrides the other party’s interpretation. When both agents (buyers, sellers, or dual) are associated with a broker, the broker cannot unilaterally determine to exercise loyalty to the buyer- or seller-associated agents to the detriment of the other, or as against the interests of the other.
*835 The Buyers have raised an issue of fact as to whether the defendant broker’s determinations and actions tortiously interfered with the purchase and sale contract. The motion for summary judgment by defendant Re/Max Results, Inc., is denied.
order
Based upon all the papers submitted in support and in opposition to these motions, and the above decision, and after due deliberation, it is hereby ordered that the motion by plaintiffs, Gregory Avery and Sundae Avery, for partial summary judgment against the defendants, Raymond E. Zahm and Carol B. Zahm, for specific performance of the purchase and sale contract entered into May 1, 1998, is granted; it is further ordered that the motion by defendant, Re/Max Results, Inc., for summary judgment dismissing the complaint as against such corporate defendant, is denied.

. Under the binding terms of the purchase and sale contract, the Buyers had 30 banking days to obtain and accept a written mortgage commitment. Although a mortgage commitment from M&T Mortgage Corporation was presented by Buyers on May 8, 1998, they technically had the remaining period to obtain an acceptable mortgage commitment.

. Satterly v Plaisted, 52 AD2d 1074 (4th Dept 1976), affd 42 NY2d 933 (1977); Pepitone v Sofia, 203 AD2d 981 (4th Dept 1994); Nelson v Ring, 136 AD2d 878 (3d Dept 1988); Rieter v Tavella, 157 AD2d 894 (3d Dept 1990); Regional Gravel Prods. v Stanton, 135 AD2d 1079 (4th Dept 1987), lv dismissed and denied 71 NY2d 949 (1988).