Pelusio v Chen (2003 NY Slip Op 51727(U))

[*1]

Pelusio v Chen

2003 NY Slip Op 51727(U)

Decided on November 21, 2003

Supreme Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 21, 2003

Supreme Court, Monroe County

DAVID PELUSIO, Plaintiff, against 
KEATH CHEN and
JIUAN CHEN, 
 
 Defendants.

2003/04474

Attorney for Plaintiff: Elizabeth J. Owen, Esq.
Appearing for
Gerald Beckerman, Esq.
Beckerman and Beckerman LLP
One West Main Street
Rochester, New York 14614
Attorney for Defendants: Michael Santariello, Esq.
99 Ridgeland Road
Rochester, New York 14623

Thomas A. Stander, J.
The Plaintiff, David Pelusio ("Buyer"), submits a motion seeking an order granting summary judgment against the Defendants, Keath Chen and Jiuan Chen ("Sellers"), dismissing the Defendants answer and counterclaim, and directing Sellers to convey to Buyer good and marketable title to the subject premises located at 155 Thackery Road, in the Town of Brighton, complying with the terms and conditions of the Purchase and Sale Contract.
[*2]
The Defendants-Sellers, Keath Chen and Jiuan Chen, submit a cross-motion seeking an order dismissing Plaintiff-Buyer's complaint; and granting to Sellers summary judgment against the Buyer; and granting to Sellers an order canceling the lis pendens placed on real property, located at 155 Thackery Road, Town of Brighton, County of Monroe, State of New York, or in the alternative, allowing the lis pendens to be modified to allow the sale of the property with an escrow or undertaking posting a sum the Court determines just and proper.
The motion of the Defendants-Sellers for summary judgment against the Plaintiff-Buyer and dismissing the complaint is granted and the lis pendens cancelled. The motion of the Plaintiff for summary judgment directing specific performance is denied.
FACTS
The parties entered into a Purchase and Sale Contract for Residential Property on April 2, 2003 for the Defendants-Sellers to convey property located 155 Thackery Road, Town of Brighton, County of Monroe, State of New York, to the Plaintiff-Buyer ("Contract"). This Contract contained certain contingencies and specifically provided that either the Buyer or Seller may cancel the contract by written notice to the other if any of the contingencies were not satisfied.
The Contract required attorney approval for the Buyer and Sellers. The Buyer specifically waived attorney approval. The Attorney Approval contingency states:

This contract is subject to the written approval of attorneys for Buyer and Seller within 5 calendar days, excluding Sundays and public holidays, from date of acceptance (the "Approval Period"). If either attorney (i) does not provide written approval within the Approval Period or (ii) makes written objection of or conditionally approves . . . the contract within the Approval Period and the Objection is not cured by written approval by both attorneys and all of the parties within the Approval Period, then (A) either Buyer or Seller may cancel this contract by written notice to the other and any deposit shall be returned to the Buyer or (B) the approving attorney may notify the other party . . . in writing that no approval has been received and that the noticed party has five (5) calendar days . . . from receipt of the notice (Grace Period) to provide written attorney approval or disapproval of the contract. The approving attorney shall provide to the noticed party . . . a copy of the approving attorney's approval letter, whether conditional or not, along with the written notice of the Grace period. If written attorney approval or disapproval is not provided to the approving attorney within the Grace Period, than this Attorney Approval contingency shall be deemed waived by the noticed party and any condition in the [*3]approving attorney's approval letter shall be deemed accepted by the noticed party. By letter of April 7, 2003 Counsel for the Sellers advised "[o]n behalf of my client, I hereby "disapprove the contract."" Counsel for the Buyer, by a response letter dated April 7, 2003, advised that the refusal to approve the contract "is arbitrary and without any legal basis or justification. The contingencies for attorney's approval and the inspection of the furnace were timely removed by the buyer."
This action for specific performance was commenced by the Buyer on or about April 11, 2003 and a Notice of Pendency was also filed. An answer and counterclaim dated April 22, 2003 was served by the Sellers. The answer states "[p]ursuant to paragraph 4(c) of the contract, if there is no attorney approval within the approval period, then either party may cancel (consider this cancellation notice in case there was any lingering doubt)(emphasis in original) " (Answer ¶10).
SUMMARY JUDGMENT MOTIONS
Both the Plaintiff-Buyer and the Defendants-Sellers seek summary judgment in their favor. These motions require the Court to review the precise contract language contained in the Purchase and Sale Contract for Residential Property.
A.Attorney Approval
When the contract language makes the agreement subject to the approval of attorneys, then the contract is not binding and enforceable until approved (Pepitone v Sofia, 203 AD2d 981 [4th Dept. 1994]; Nelson v Ring, 136 AD2d 878 [3rd Dept. 1988]; Christ v Brontman, 175 Misc.2d 474 [Monroe Cty 1997]; Riley v Ferreira, 2002 Slip Op 50079U, 2002 NY Misc. LEXIS 145 [Monroe Cty 2002]). In a real estate transaction when an attorney disapproves the contract, such disapproval terminates the parties rights under the agreement (McKenna v Case, 123 AD2d 517 [4th Dept. 1986]).
The Contract herein is "subject to the written approval of attorneys for Buyer and Seller."[FN1] The attorney for the Sellers sent a written letter, within the Approval Period set by the Contract, advising that he "disapprove[d] the contract." The Purchase and Sale Agreement was never approved by counsel to the Sellers.[FN2]
 Under the applicable legal principles, the Contract never became binding and [*4]enforceable (Pepitone at 981). The disapproval of the Contract by Sellers' attorney terminated any rights of the Buyer under the Contract (McKenna at 517).
B.Cancellation Notice
Buyer argues that even though Sellers' attorney sent a letter not approving the contract, the Seller never canceled the Contract as required by Paragraph 4(c). However, the attorney approval contingency language agreed to by the parties clearly supports the position that the Contract was never binding. Therefore, the contract did not need to be, and, in fact could not be, "canceled".
The contingency clearly and unequivocally states that "[i]f either attorney [ ] does not provide written approval within the Approval Period, then [] either Buyer or Seller may cancel this contract by written notice to the other." The Sellers' attorney never provided written approval.[FN3] Instead, by disapproving the contract in the letter dated April 7, 2003, the Sellers' attorney provided written notice that the contingency for attorney approval was not met and the proposed contract was not binding or enforceable.[FN4] A contract was never formed by the parties because there was never an attorney approval.
There is no need or requirement to cancel a "proposed agreement". In fact, if at the time of the disapproval, a formal cancellation notice was sent by the Sellers, it might be misconstrued as an admission that a binding contract did exist. The attorney disapproval letter effectively rendered the Contract non-binding and unenforceable, with no necessity of formal cancellation under the Contract terms.[FN5]
[*5]
C.Right to Cure
The Buyer further argues that the disapproval of the Sellers' attorney should be deemed waived because the letter did not set forth specific objections to the Contract nor provide the Buyer with an opportunity to cure any objections. There are two cases decided by this Court which address the need to comply with the specific attorney approval contingency language stated in the agreement.
The attorney approval contingency language contained in Christ v Brontman, 175 Misc.2d 474 [Monroe Cty 1997] and in Avery v Zahm, 178 Misc.2d 827 [Monroe Cty 1998] specifically required that there be an opportunity to cure any written objection. Under the attorney approval contingency language contained in the Christ and Avery purchase and sale agreements, if an attorney made written objection to the contract, then there was an opportunity to cure. This additional process contained in the attorney approval contingency in these specific contracts was held enforceable and binding (Id.).[FN6] The additional process set forth in the attorney contingency language of Christ and Avery does not exist in the attorney approval clause in the Contract at issue.
The relevant attorney approval contingency language contained in the Pelusio Contract provides for two separate occurrences, the first is when written attorney approval is not provided and the second is when the attorney makes written objection or conditionally approves the contract. Only under the second scenario does the Contract provide for a period to cure similar to the contracts in Christ and Avery. Here the Sellers attorney never approved the contract, rendering the proposed agreement non-binding and unenforceable. Therefore, under the facts presented the second portion of the contingency requiring additional process or an opportunity to cure does not apply.[FN7]
[*6]
The argument of the Buyer, that the disapproval of the Contract by the Sellers attorney should be deemed waived because there were no specific objections to the Contract nor an opportunity to cure, is without merit.
D.Bad Faith
The Buyer alleges that the Sellers acted unfairly and in bad faith by their attorney's letter disapproving the Contract. If disapproval of a Contract is occasioned by bad faith, then the contingency for attorney approval is deemed waived and the contract formed (McKenna at 517; see Austin v Trybus, 136 AD2d 940 [4th Dept. 1988]).
Generally the issue of bad faith raises a question of fact precluding summary judgment. However, in certain circumstances, summary judgment has been granted. In a real estate transaction bad faith has been determined to exist when the uncontradicted proof on a summary judgment motion conclusively shows that Defendant instructed his attorney to disapprove the contract, and Defendant interfered and prevented his attorney from considering the contract (McKenna at 517). It has also been determined on summary judgment that it is unreasonable for a buyer to fail to contact an attorney for over three months after acceptance of the purchase offer and then have the attorney delay in disapproving the contract until the closing date (Austin at 941). Summary judgment was granted upholding disapproval of a contract in accordance with the attorney approval contingency where there was no interference by the clients that prevented their attorney from considering the contract and even when the attorney considered extrinsic evidence, including another offer (Ulrich v Daly, 225 AD2d 229 [3rd Dept. 1996]). Therefore, summary judgment is warranted when the issue of bad faith is conclusively resolved by uncontradicted proof.
Here the Buyer asserts that bad faith is shown by the disapproval letter of counsel for the Sellers where the attorney approval contingency is treated as a rescission period and when the Sellers unilaterally and arbitrarily change their minds. Buyer also alleges bad faith of the Sellers by the act of Sellers instructing their attorney to disapprove the contract because of a change of mind or attempt to accept a higher offer. The Buyer also avers that he has been ready, willing, and able to perform under the contract and has the necessary funds to complete the transaction. The Buyer's position is that the conduct of Sellers, with no legitimate basis for disapproving the Contract, constitutes bad faith and the condition requiring Seller's attorney's approval is thereby deemed waived and the Contract enforceable.
The evidence shows that both parties agreed to use the standard real estate purchase and sale contract which makes the Contract subject to the approval of the parties attorneys. In this case the Sellers did not have an attorney at the time of the negotiations and execution of the Contract.[FN8] The Contract [*7]was signed on the evening of April 2, 2003. The evidence submitted shows that the Sellers contacted counsel the next morning indicating that something was wrong with the whole process and that the Sellers were stressed, nervous, worried and questioned many aspects of the Contract. In the afternoon of April 3, 2003, in accordance with the Attorney Approval Contingency the attorney for Sellers received a copy of the proposed Contract.
The attorney, Michael Santariello, reviewed the substantive content of the Contract. He listened and gave weight to his clients concerns and perceptions about the whole process leading up to the Contract, including, without limitation, the Realtors; the buyer and his tactics; the lack of opportunity to read the contract; the feeling of being pressured to sign; the sequence of signatures, and the value of the house. The Sellers' attorney performed his own review and assessment of the Contract. He checked the MLS listing computer to obtain information about the transaction and found that the house was listed on March 31, 2003, with negotiations leading to this Contract executed April 2, 2003, and that the price of this house was considerably lower than others in the neighborhood. The attorney also rechecked the MLS listing and checked with the tax assessor's office. This review led to the discovery that the price was low; consistent with the clients expressed concerns.
The Sellers' attorney talked with his clients about the lack of verification that the Contract was authentically an "all cash offer" and how this might be addressed; and discussed the meaning and impact of the "or assign" language stated in the Contract. The clients also informed the attorney of an unseen later larger offer from a neighbor, that they had no plans as to where they were going to move, and that the clients had different expectations of the sale. The attorney discussed the clients relative lack of "worldliness". The attorney talked with the realtor, Michael Haynes and informed him of the pending disapproval. The attorney avers that his clients never instructed him to disapprove the contract.[FN9]
The attorney approval contingency does not prohibit the attorney from considering extrinsic information concerning the contract in deciding whether to approve or disapprove a real estate purchase contract (see Ulrich at 231).

[A] prohibition [in an attorney approval clause from considering matters extrinsic to the contract in deciding whether to approve or disapprove the matters contained in the contract] would severely limit the attorney's ability to advise his client. . . . In essence, plaintiffs seek to limit the attorney approval process to consideration of the form of the contract only, for reference to extrinsic matters would often be required in reviewing substantive matters in the contract.
[*8]
(Ulrich at 231.) Attorney Michael Santariello avers that the disapproval of the Contract on behalf of the Sellers was the culmination of many factors and considerations. The attorney, without any instructions or directives from his client, exercised his independent legal judgment to disapprove the Contract.
There is no evidence presented that the Sellers interfered or prevented their attorney from considering the contract, or directed the attorney to disapprove the contract (see McKenna at 517). The purpose of an attorney approval contingency is to provide an opportunity, when entering into a binding and enforceable contract to buy or sell real estate, for laypeople to obtain the advice of counsel. The contingency prevents the proposed Contract from being binding and enforceable until legal review and advice is secured. Necessarily the attorney must have the freedom and right to review the substantive terms of the contract, the impact of the proposed agreement upon his client, and make a legal determination of whether to approve or disapprove the agreement. The evidence shows that the attorney for Sellers performed his obligations to review the contract substantively, rather than just as to form, and exercised his sole legal judgment to disapprove the contract.
The Buyer does not raise any issue of fact concerning bad faith of the Sellers. The uncontradicted proof conclusively shows that the attorney properly disapproved the contract, with no bad faith on the part of Sellers.
E.Conclusion
The motion by the Plaintiff, David Pelusio, for summary judgment against the Defendants and for an order directing specific performance to convey title to the premises at issue is DENIED.
The motion by the Defendants, Keath Chen and Jiuan Chen, for summary judgment against the Plaintiff and for an order canceling the Notice of Pendency is GRANTED.
O R D E R
Based upon all the papers submitted in support and in opposition to these motions, upon the above Decision, and after due deliberation, it is hereby

ORDERED that the motion of the Plaintiff, David Pelusio, for summary judgment against the Defendants, Keath Chen and Jiuan Chen, and for an order and judgment directing the Defendants to convey to Plaintiff good and marketable title to the premises located at 155 Thackery Road, Town of Brighton, County of Monroe, State of New York, is DENIED; it is further
ORDERED that the motion of the Defendants, Keath Chen and Jiuan Chen, for summary judgment dismissing the Complaint of the Plaintiff is GRANTED; it is further
[*9]
ORDERED that the motion of the Defendants, Keath Chen and Jiuan Chen, for an order and judgment canceling the Notice of Pendency filed in this action is GRANTED; and it is further
ORDERED that the Notice of Pendency filed on April 11, 2003 on the subject real property of Defendants, Keath Chen and Jiuan Chen, located at 155 Thackery Road, Town of Brighton, County of Monroe, State of New York is CANCELLED.
Dated:November 21, 2003
Rochester, New York
__________________________________________
Thomas A. Stander
 Supreme Court Justice
 Footnotes

Footnote 1: Again, in the Contract the Buyer waived his right to attorney approval.

Footnote 2: "Written Approval" was clearly not provided and a letter of disapproval of the Contract certainly falls within the plain meaning of this language. To argue otherwise is nonsensical. In fact, the attorney approval contingency language in the Contract talks in terms of "written attorney approval or disapproval of the contract." 

Footnote 3: The instant situation is different than when an attorney for one of the parties never provides a response on attorney approval within the Approval Period. The contract provides a remedy in the event an attorney fails to respond. 

Footnote 4: Nevertheless, a statement in the attorney letter disapproving the contract to the effect that the agreement was not binding and was unenforceable might clarify to all involved that the proposed contract was cancelled.

Footnote 5: Even so, in the Verified Answer of the Defendants dated April 22, 2003, the Sellers complied with the specific Contract term at paragraph 4(c) and provide written notice of cancellation of the parties Contract. The formal written cancellation notice given by the Sellers pursuant to the terms of the Contract was in direct response to this lawsuit by the Buyer. This timely cancellation notice in the pleadings serves as an alternative method to demonstrate that the Contract is non-binding and unenforceable.

Footnote 6: In Christ the attorney letter declaring the purchase offer null and void was not based on the attorney approval contingency, but instead relied on an alleged contingency of the Buyers that they receive a $450 credit for repairs. It was held that the Sellers could object to the modification for a credit for repairs, but the underlying purchase agreement was binding.
In Avery the Sellers' attorney sent two letters immediately following each other in an attempt to void the contract. One purporting to deem the agreement null and void based on failure to remove the sales contingency. The other advising he was not approving the contract because his clients realized the contract was not as they originally understood and deemed the contract not acceptable. 

Footnote 7: Under the first provision of the attorney approval contingency, unlike the contingency at issue in the Christ and Avery cases, the Contract also provides a remedy for the situation when either attorney does not provide written approval within the Approval Period. This is a separate issue from a specific attorney letter disapproving the contract. 

Footnote 8: Under the Administrative Information of the Purchase and Sale Contract, the line for listing the attorney for the Seller is stated as "name to follow."

Footnote 9: The clients did however concur with their attorneys judgment.